**MERSLIE, INC. et al., Appellants,**

v.

**OHIO DEPARTMENT OF ADMINISTRATIVE SERVICES;**
**Ohio Department of Education, Appellees.**

[Cite as *Merslie, Inc. v. Ohio Dept. of Adm. Serv.* (1995), 105 Ohio App.3d 386.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE01–95.

Decided July 20, 1995.

---

*Berry & Shoemaker* and *Kevin L. Shoemaker,* for appellants.

*Betty D. Montgomery,* Attorney General, *Helen S. Carroll.* and *John P. Ware,* Assistant Attorneys General, for appellee Ohio Department of Education.

LAZARUS, Judge.

This appeal arises out of a taxpayer suit against appellee, Ohio Department of Education ("ODE").[1] Appellants, Merslie, Inc. and Rod W. Durgin, alleged that ODE exceeded its authority by allowing local school districts to participate in a contract for a computer system to help people make career choices. The case was tried on stipulated facts before the Franklin County Court of Common Pleas. Appellants appeal from the judgment of the court in favor of ODE. Specifically, appellants take issue with the trial court's findings that (1) R.C. 125.04(B) does not prohibit ODE from entering into licensing agreements with school districts who receive career information via the Ohio Career Information System ("OCIS"), and (2) ODE has authority under existing statutes to enter into contracts with vendors to implement OCIS.

Appellants assign the following two assignments of error for our review:

1. "The lower court erred in holding that Ohio Department of Education has authority to contract with an entity for the purchase of supplies and services to be utilized by a political subdivision of the state."

2. "The lower court erred in determining that the Ohio Department of Education has the authority to participate in a federal program to supply career information to schools."

The parties' dispute revolves around an occupational computer information system. In 1975, the state of Ohio and other pilot states received funding from the United States Department of Labor to develop a model career information system. Then in 1976, the United States Congress established the National Occupational Information Coordinating Committee ("NOICC") and the State Occupational Information Coordinating Committees ("SOICC").

Pursuant to Section 2422, Title 20, U.S.Code, the NOICC provides funds to the SOICC. An SOICC which receives such funds is required to develop and implement an occupational information system and "shall * * * (B) use the occupational information system to implement a career information delivery

---

1. On November 3, 1994, plaintiffs-appellants voluntarily dismissed the Ohio Department of Administrative Services, leaving ODE as the only remaining defendant.

system." As of 1994, all states are operating occupational computer information systems.

The OCIS is a computer system that includes national, state and local occupational information, armed services occupational information, vocational and postsecondary school information, and national, state and local financial aid information.

In 1982, ODE assumed administration of OCIS. In 1989, ODE began to contract with a vendor for a multi-user license for mainframe software and microcomputer software. The vendor supplies materials to support and interpret the system, provides professional and technical support to ODE, and assists ODE with training workshops and Ohio file data collection. The vendor compiles national career information and develops a computer program to transform the national, state and local information into effective, readable form. This computer program is then made available for use by several public entities, including school districts, in exchange for a licensing fee.

The Ohio General Assembly has not enacted any legislation specifically authorizing ODE to administer OCIS; however, each biennium the General Assembly provides a specific appropriation to ODE for the dissemination of career information data to public schools, libraries, rehabilitation centers, colleges and other governmental units. This appropriation is used to pay the selected vendor for career information software and the accumulation of national statistics.

In addition to this funding, ODE collects user licensing fees from various school districts, colleges, correctional institutions and other state agencies. User licensing fees collected by ODE for OCIS are placed in a separate rotary fund to cover the cost of administering OCIS. The user licensing fees are used to pay two professional and one support staff member to operate OCIS and to provide related publications, equipment, training, shipping and postage, storage and travel. The user licensing fees are established at a level which covers the cost of administering OCIS. The amount the vendor is paid pursuant to its contract with ODE is not dependent on how many schools or other users choose to enter into licensing agreements. The user licensing fees are not used to pay the vendor. Rather, they go into a separate rotary fund to pay administrative expenses. Ohio schools are not required to purchase vendor services through OCIS; some purchase similar systems from private vendors, and some have no career information service at all.

In the past, appellants have submitted proposals to ODE to be selected as the vendor for OCIS. Appellants have never been the chosen OCIS vendor. Appellants presently market and sell their own career information software to several Ohio school districts.

Appellants characterize the contract between ODE and the vendor and the licensing agreements between ODE and the school districts as one inclusive contract to provide supplies and services to Ohio school districts.. Appellants assert that, at present, ODE selects a vendor and then requires payment to ODE from a local school board. Appellants contend that such an arrangement is contrary to R.C. 125.04(B), as that statute permits political subdivisions such as school districts to participate in a state contract only if specific requirements are met.[2]

ODE, on the other hand, characterizes the contract between the vendor and ODE as distinct from the licensing fee agreements between ODE and the school districts to administer OCIS. According to ODE, no political subdivisions participate in the contract entered into by ODE and the OCIS vendor, and the fact that ODE enters into separate licensing agreements with school districts and other governmental entities does not make those school districts and governmental entities participants in ODE's contract with the OCIS vendor.

The trial court concluded that R.C. 125.04(B) did not prohibit ODE from entering into licensing agreements with school districts who receive career information via OCIS. The court below also determined that ODE had the authority to enter into contracts with vendors to implement OCIS.

 We find that the trial court was not constrained to accept appellants' characterization of the evidence as one inclusive contract to provide supplies and services to school districts. A civil judgment "supported by some competent,

---

2. R.C. 125.04(B) provides in pertinent part:

"The department of administrative services may permit a political subdivision to participate in contracts into which the department has entered for the purchase of supplies and services other than printing materials. Any political subdivision desiring to participate in such purchase contracts shall file with the department a certified copy of an ordinance or resolution of the legislative authority or governing board of the political subdivision. The resolution or ordinance shall request that the political subdivision be authorized to participate in such contracts and shall agree that the political subdivision will be bound by such terms and conditions as the department prescribes and that it will directly pay the vendor under each purchase contract. The department may charge a political subdivision a reasonable fee to cover the administrative costs the department incurs as a result of the subdivision's participation in the purchase contract. Purchases made by a political subdivision under this division are exempt from any competitive selection procedures otherwise required by law. No political subdivision shall make any purchase under this division when bids have been received for such purchase by the subdivision, unless such purchase can be made upon the same terms, conditions, and specifications at a lower price under this division."

credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. The facts support the conclusion that the contract between ODE and the vendor is separate and distinct from the licensing agreements between ODE and the school districts. The stipulated facts reveal that the user licensing fees collected by ODE from the school districts do not go to pay the vendor but, instead, are placed in a separate rotary fund to administer OCIS. Also, the fees are established at a level which covers the cost of administering OCIS, and the sum paid to the vendor pursuant to the contract with ODE is not affected by the number of users entering into licensing agreements with ODE. Consequently, the trial court had before it sufficient competent, credible evidence to support its judgment. Appellants' first assignment of error is overruled.

For their second assignment of error, appellants challenge ODE's authority to implement OCIS. Appellants claim ODE has no authority to sell supplies and services in relation to career information to students and, although the General Assembly has appropriated funds for postsecondary/adult vocational education, there is no explicit or implicit authority for ODE to provide general career information to high schools throughout the state. Appellees readily concede that the General Assembly has not enacted any specifically codified legislation which authorizes ODE to administer OCIS. As discussed above, appellees contend that they are not purchasing or selling supplies and services to school districts but are following the mandate of Section 2422, Title 20, U.S.Code and implementing a career information delivery system. The system, OCIS, is made operational by contracting with a vendor to compile state and national data into a usable form. Making the information readable, however, does not, standing alone, effectively implement OCIS. Thus, ODE provides the system at cost to school districts by means of the licensing agreements.

ODE contends its authority to make career information available to students flows from R.C. 3301.07(B), which provides that the State Board of Education shall:

"Exercise leadership in the improvement of public education in this state, and administer the educational policies of this state relating to public schools, and relating to instruction and instructional material, building and equipment, transportation of pupils, administrative responsibilities of school officials and personnel, and finance and organization of school districts and territory. * * * "

ODE is the administrative unit through which the policies, directives, and powers of the State Board of Education and the duties of the Superintendent of Public Instruction are administered. R.C. 3301.13. R.C. 3301.12(A) places upon

the Superintendent of Public Instruction a duty of providing technical and professional assistance and advice to all school districts in reference to all aspects of education. R.C. 3301.07(B) places a duty on the State Board of Education to provide consultive and advisory services to all school districts with respect to the same matters. *State ex rel. Bratenahl Loc. School Dist. Bd. of Edn. v. State Bd. of Edn. of Ohio* (Dec. 16, 1976), Franklin App. No. 74AP–458, unreported. By making OCIS available to local school districts at cost, ODE is fulfilling its statutory obligation to provide assistance in making career information available to students. Appellants' second assignment of error is not well taken and is overruled.

Based on the foregoing, appellants' two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and TYACK, JJ., concur.